## Brewer v. Commonwealth.

### March 7, 1950.
### Edward P. Hill, Judge.

A. J. May and Howard & Combs for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE CAMMACK—Affirming.

Foster Brewer is appealing from a judgment sentencing him to 10 years in prison for shooting and wounding Luther Allen. The grounds urged for reversal are (1) the fourth instruction given the jury was

prejudicially erroneous; (2) employed counsel for the Commonwealth was guilty of misconduct in his closing argument to the jury; and (3) incompetent evidence was admitted.

Foster Brewer and his brother, James, the prosecuting witness, Luther Allen, and his nephew, Earl Allen, were in a group at a store earlier in the night of the shooting at Brewer's home. The Allens had some whiskey, and there is testimony that all the parties were drinking. Earl Allen seems to have been drinking more than any of the others and was making trouble. When the store closed Brewer went home and his brother went with the Allens to get more whiskey. Shortly after James Brewer returned to the appellant's home, the Allens came in. Because of Mrs. Brewer's attitude, Brewer said he asked the Allens to leave. From this point there is considerable conflict in the proof as to what happened.

According to the Commonwealth's version of the case, all the men went out on the porch and took a drink except the appellant. Luther Allen said that, when he asked Brewer to take a drink, he answered, "I don't want none of your damned whiskey." Allen's response was, "Oh, don't be a chicken. Come on and take one." Brewer then shot at Allen three times, two of the shots striking him in the right side. Earl Allen ran and Brewer fired two or three shots at him. He walked over and kicked Luther Allen on the side of the head. As Brewer's wife was leading him in the house, he said, "Let me back out—I want to finish this son of a bitch." Luther Allen was unarmed. Neighbors said they heard the shooting and saw a man on the ground beside the chicken house in Brewer's yard and saw someone kick him. According to their testimony there were two series of shots.

Brewer's version of the shooting was that after he and his wife started to go to bed they heard the gate slam. He went downstairs and pushed open the screen door. Someone at the gate said, "Brewer's got a God damned gun, and I've got one, too." When he went on the porch he saw it was Luther Allen and he identified the voice as Luther's voice. Earl Allen was present also. As to the actual shooting, Brewer said:

"He kept coming around the edge of the porch. I said, 'Luther it looks like you come here for trouble.' He never spoke a word until he come in on the porch. He had propped his foot up on the porch. When he had his foot propped up on the porch, I said, 'Luther, don't come in my house.' He said, 'You God damned son of a bitch.' and run his fingers down in his pocket. That scared me, and I shot him then."

Brewer said Allen fell after he fired the third shot and when Earl said, "Give *my* your gun, Uncle," Luther replied, "Don't touch me, Earl." He denied kicking Luther in the head after he was down.

The first part of Instruction No. 4 told the jury that Brewer had the right to defend himself and his home against Luther and Earl Allen. The latter part of the instruction, however, made reference only to Luther Allen. The wording follows:

"* * * that he or any member of his family was then in danger of death or great bodily hard at the hands of the said Luther Allen, he had the right to use such force as was necessary, or reasonably appeared to him to be necessary, for his or their protection, even to the shooting of said Luther Allen, and if he so shot and wounded said Luther Allen the jury should acquit him."

It is urged that the name of Earl Allen should have been included in the latter part of Instruction No. 4. It is pointed out that Earl had been somewhat belligerent earlier in the evening and that he had told someone before he and Luther entered Brewer's home to look out for something to happen. The circumstances pertaining to the shooting, however, relate to the time when the Allens returned to Brewer's home. While Brewer said Earl was present when Luther made the statement about having a gun and started up on the porch, it was Luther and not Earl who was the aggressor at that time. Instruction No. 4 told the jury that Brewer had the right to use such force as was necessary, or as reasonably appeared to him to be necessary, to protect himself or his home from Luther Allen. Earl Allen did not enter into the affray. As a matter of fact, all the testimony shows that he started running when his uncle was shot.

In his argument for the Commonwealth, Edward L. Allen, employed counsel, referred to the father of Lu-

ther as "Preacher Green Allen." It is insisted that this was done to give added weight to his testimony, and that there was no evidence showing that the witness was a preacher. When Earl Allen was asked where he lived, he replied that he lived with his grandfather. He was then asked, "Is that Preacher Green Allen?" and he answered, "Yes." It was shown, therefore, that Green Allen was known as "Preacher Green Allen." Under the circumstances, we think the second contention urged for reversal is without merit.

During the trial Luther Allen was shown a brown shirt with bullet holes in it and asked whether that was the shirt he was wearing when he was shot, and he answered that it was. He then showed the jury where the bullets entered his body. Under the facts and circumstances of this case we fail to see how permitting the members of the jury to see the shirt was prejudicial to the appellant's substantial rights. It is not urged that the bullet holes in the shirt did not correspond to those in Allen's body insofar as location was concerned. Apparently, the shirt has been in Allen's possession since the time he was shot. Of course, if the admissibility of the shirt had been a crucial point in the case, it would have been proper to have shown that the shirt was in the same condition as it was after it was removed from Allen's body at the time he was shot.

For the reasons given we think the judgment should be and it is affirmed.